***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon review of the evidence affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner and in a Pre-Trial Agreement dated May 13, 2002, as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The North Carolina Industrial Commission has jurisdiction over the parties and the subject matter.
2. An employment relationship existed between plaintiff and defendant-employer on May 11, 2000, when plaintiff sustained a compensable injury to her back.
3. Defendant-employer is self-insured.
4. The following documents were stipulated into evidence: (a) Plaintiff's medical records; and (b) Plaintiff's W-2 Forms for 1999 and 2000.
 ***********
Based upon all of the most competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant on May 11, 2000. She worked as a registered nurse who traveled around to surrounding areas providing in-home healthcare to patients. She also worked as a nurse on the floor on an as-needed basis for Wake Forest University Baptist Medical Center.
2. Plaintiff sustained an admittedly compensable injury by accident to her back on May 11, 2000 when she was on a pediatric medical visit and the 70-pound sibling of a baby who was her patient slipped on a step and fell onto plaintiff. At the time, plaintiff did some twisting and turning to keep herself from falling, and she felt something pop in her back. She had no acute pain at the time, but in completing her tasks for the day, the pain began to develop and worsen.
3. Plaintiff was initially treated on May 12, 2000, by Dr. Norman Templon of Aegis Urgent Care Occupational Health. She was diagnosed as having a low back strain. Her pain was related to her right SI joint. Plaintiff was followed by Dr. Templon and Dr. Todd Beck at Aegis and sent for physical therapy. Plaintiff's condition improved somewhat; however, driving appeared to aggravate her back pain so Dr. Beck advised her to minimize her driving. Plaintiff reported to Dr. Templon on June 19, 2000, that after driving, she awoke during the night with "severe pain."
4. Due to plaintiff's desire to return to work and because of the pain plaintiff experienced after driving, she took a position that became available to work as a nurse in the Pediatric Allergy Clinic at Wake Forest University Baptist Medical Center that reduced her driving requirements. Even though plaintiff's back pain was not fully resolved, plaintiff was released to full duty with no restrictions effective July 3, 2000, so that she could begin her new position in the clinic. At the time of her release to return to work, plaintiff still had residual back pain from the original incident of May 11, 2000 and was in fact, still convalescing.
5. On July 25, 2000, plaintiff began to experience severe back pain, which extended into her left hip and leg. Plaintiff had not sustained any new or intervening injury to her back. The pain became so severe that the next morning she sought treatment at the emergency room of Wake Forest University Baptist Medical Center. Plaintiff was prescribed pain medication and advised to see her regular family physician.
6. On July 31, 2000, plaintiff followed up with her family physician, Dr. Franklin Tolbert. Based upon plaintiff's symptoms of pain radiating down her left leg, Dr. Tolbert scheduled an MRI of her lower back. The MRI indicated a "left lateral disc herniation at L4-L5" and "degenerative disc changes at L5-S1 with possible small left-sided disc herniation." Dr. Tolbert then referred plaintiff to neurosurgeon, Dr. William O. Bell.
7. Pursuant to the MRI, Dr. Bell found that plaintiff had a ruptured disc on the left at L4-L5, and he initially recommended surgery. On a later visit on August 23, 2001, Dr. Bell noted that a repeat scan of July 2, 2001 showed that the ruptured disc at L4-L5 was smaller. He no longer recommended surgery.
8. Plaintiff's family physician, Dr. Tolbert, who is board-certified in family medicine, and Dr. William O. Bell, who is board-certified in neurosurgery opined, and the Full Commission finds, that plaintiff's left-sided symptoms and disc herniation in August and September of 2000 resulted from the compensable back injury plaintiff sustained on May 11, 2000, even though plaintiff's initial complaints and symptoms related to her right side. Both physicians agreed that it was not unheard of for a patient to have pain on one side that gravitates to the other side. It was Dr. Tolbert's opinion that pain can shift based on reflex spasm. Dr. Bell was of the opinion that plaintiff had a lumbosacral type strain that primarily affected her right side, but significantly weakened her back such that the disc at L4-5 ruptured, causing left-sided leg pain and numbness.
9. In February 2002, plaintiff reached maximum medical improvement, and Dr. Bell assigned plaintiff a 10% permanent partial impairment rating to her back as a result of her May 11, 2000 injury.
10. Pursuant to a Form 63 filed in this matter, plaintiff received temporary total disability benefits from May 12, 2000 to July 2, 2000 at a rate of $547.41 per week, based on an average weekly wage of $821.07.
11. It is not clear from the evidence in this matter the exact amount plaintiff earned beginning July 3, 2000, but the evidence does establish that her wages were lower than her average weekly wage at the time of her compensable back injury. Plaintiff's diminished wages were due to her compensable injury. The job she took to lessen her pain caused by driving paid less than her pre-injury job.
 ***********
The foregoing findings of fact and conclusions of law engender the following:
 CONCLUSIONS OF LAW
1. On May 11, 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Based on the Form 63 filed in this matter, on May 11, 2000, plaintiff's average weekly wage was $821.07, yielding a compensation rate of $547.41. N.C. Gen. Stat. § 97-2(5).
3. As a result of her injury by accident, plaintiff was totally disabled and has been compensated for the period from May 12, 2000 to July 2, 2000. As a result of her injury, plaintiff's earning capacity is diminished and she is entitled to the more munificent remedy of partial disability benefits beginning July 3, 2000, at the rate of two-thirds of the difference between her pre-injury average weekly wage of $821.07 and the average weekly wage she has earned since July 3, 2000 and continuing for up to 300 weeks from the date of injury. N.C. Gen. Stat. § 97-30.
4. Plaintiff is entitled to receive payment of all medical expenses incurred as a result of her injury by accident of May 11, 2000, including the payment of expenses for medical treatment rendered by Dr. Franklin Tolbert and Dr. William O. Bell. Plaintiff is entitled to continued medical treatment for her injuries related to her compensable injury for so long as such treatment is necessary to effect a cure, provide relief and/or lessen her period of disability. N.C.G.S. § 95-25.
5. Dr. William O. Bell is designated as plaintiff's primary treating physician for the purposes of providing medical treatment to plaintiff for her back condition. N.C.G.S. § 95-25.
 ***********
Based on the foregoing stipulations, findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to an attorney's fee approved herein, defendant shall pay to plaintiff temporary partial disability compensation beginning July 3, 2000, at the rate of two-thirds of the difference between her pre-injury average weekly wage of $821.07 and the average weekly wage she has earned since July 3, 2000 and continuing for so long as her current average weekly wage is less than her pre-injury average weekly wage, but not to exceed a period of 300 weeks from the date of injury. Amounts which have accrued shall be paid in one lump sum.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of her injury by accident on May 11, 2000, including, but not limited to, medical treatment rendered by Dr. Franklin Tolbert and Dr. William O. Bell, when bills for same have been submitted and approved according to proper Industrial Commission procedure.
3. A reasonable attorney's fee of twenty-five (25%) percent of the compensation due plaintiff under Paragraph One of this AWARD is approved for plaintiff's counsel and shall be paid by defendant as follows: twenty-five (25%) percent of the accrued compensation due plaintiff shall be deducted from said compensation and shall be paid in one lump sum directly to plaintiff's counsel; thereafter, plaintiff's counsel shall be paid every fourth check due plaintiff.
4. Defendant shall pay the costs.
This the ___ day of July 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/____________ DIANNE SELLERS COMMISSIONER